**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

LANORAH WOODRUFF,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:19-CV-2179-DMC

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g) denying childhood disability benefits to her minor child. Pursuant to the written consent of all parties, see ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits, see ECF Nos. 13 and 14.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

This case involves a child's application for social security benefits. Child's Supplemental Security Income is paid to disabled persons under the age of eighteen. A child is considered disabled if the child has a medically determinable physical or mental impairment that results in marked and severe functional limitations. See 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner employs a three-step sequential evaluation process to determine whether a child is disabled. See 20 C.F.R. § 416.924(a)-(d). The sequential evaluation proceeds as follows:

Step 1 — Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2 — If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

/ / /

        Step 3 If the claimant has one or more severe impairments, determination whether any such severe impairment meets, medically equals, or functionally equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted.

See 20 C.F.R. § 416.924(a)-(d).

Evaluation of a childhood disability claim does not involve determination of the claimant's residual functional capacity or consideration of vocational issues.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on behalf of the claimant, Plaintiff's minor child, on June 10, 2014. See CAR 1020.[1] In the application, plaintiff claims disability began on January 1, 2003. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 17, 2016, before Administrative Law Judge (ALJ) Mark C. Ramsey. In a September 16, 2016, decision, the ALJ concluded plaintiff is not disabled. See id. at 1020-30.

On October 19, 2017, the Appeals Council denied review. See id. at1036-42. On December 22, 2017, Plaintiff filed an action for judicial review, Woodruff v. Commissioner of Social Security, 2:17-CV-2678-AC. On October 9, 2018, the parties entered into a stipulation to remand the matter back to the Commissioner for further evaluation. See CAR 1048-49. The stipulation provided:

> On remand, the Appeals Council will remand the case to an administrative law judge (ALJ) for a new hearing and decision. Additionally, the Appeals Council will instruct the ALJ to further develop the record with evidence from a pediatric medical expert, consistent with Acquiescence Ruling 04-1(9).

Id. at 1048.

/ / /

/ / /

[1] Citations are the to the Certified Administrative Record (CAR) lodged on January 31, 2020, see ECF No. 10.

Consistent with the parties' stipulation, on February 23, 2019, the Appeals Council remanded the case for further evaluation by an ALJ. See id. at 1054-56. The Appeals Council identified the following issues on remand: (1) the ALJ did not address the requirements of Acquiescence Ruling 04-1(9); and (2) the ALJ did not adequately reconcile evidence of greater functional limitations regarding Claimant's asthma with the ALJ's conclusions. See id. In particular, the Appeals Council directed the ALJ to contact treating physician, Dr. Nandalike, "for clarification about the claimant's functioning, as needed. . . ." Id. at 1056.

A second hearing was held on July 9, 2019, before ALJ Mary M. French. See CAR 956. Claimant's mother, Plaintiff herein, testified at the hearing, as did Sai R. Nimmagadda, M.D., an impartial medical expert. See id. In a July 31, 2019, decision, the ALJ determined Claimant is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): asthma, allergies, obesity, and sleep apnea; and
>
> 2. The claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in the regulations.
>
> See id. at 959-68.

After the Appeals Council declined further review on February 23, 2019, this second appeal followed.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ either failed to discuss or adequately address various medical opinions relevant to Claimant's domains of functioning in the context of Listing 103.03 relating to asthma; (2) the ALJ impermissibly "consolidated" his analysis of various domains of functioning; and (3) the ALJ failed to properly evaluate lay witness evidence. The gravamen of Plaintiff's argument is that Claimant's asthma satisfied the requirements of prior Listing 103.03C.2, which was amended before the second hearing. See CAR 13, pgs. 2-3.

/ / /

**A. Domains of Functioning**

At Step 3 of the childhood disability evaluation process, the ALJ considered Listing 103.03. See CAR 958-67. The ALJ stated:

> At step thee, the undersigned must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a listing, or that functionally equals the listing. In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe (citations to the regulations omitted). If the claimant has an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, she is presumed to be disabled. If not, the claimant is not disabled (citations to the regulations omitted).
>
> In determining whether an impairment or combination of impairments functionally equals the listings, the undersigned must assess the claimant's functioning in terms of six domains: (1) acquiring and using information (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation on one domain (citation to the regulations omitted).
>
> CAR 958.

The ALJ then outlined the relevant regulations defining "marked" and "extreme" limitations. See id. at 958-59.

As to Listing 103.03, the ALJ concluded that "[t]he claimant's impairments do not meet or equal any of the relevant respiratory listings including, but not limited to listing 103.03. . . . Specifically, the record does not document the required spirometry readings (E.g. FEVI, FVC, or single-breath DLCO readings) or evidence that the claimant has been hospitalized for asthma exacerbations or complications with the required durational frequency." CAR 960.

/ / /

/ / /

/ / /

/ / /

The ALJ then considered whether Claimant's impairments functionally equal a listed impairment and concluded they do not. See id. at 960-67.

As to Claimant's ability to acquire and use information, 20 C.F.R. § 416.926a(b)(1)(i), and attend to and complete tasks, 20 C.F.R. § 416.926a(b)(1)(ii), the ALJ noted that Dr. Nimmagadda, a medical expert who reviewed the file and testified at the hearing, found less than marked limitations in both domains. See CAR 964-65. Additionally, the ALJ cited Claimant's 12th grade teacher, who submitted a report stating that Claimant has only a slight problem in comprehending and doing math problems. See id. at 965 (citing Exhibit 16E). Finally, the ALJ noted Claimant's hearing testimony where she stated she graduated high school in May 2019 and plans on attending junior college. See id.

As to Claimant's ability to interact and relate with others, 20 C.F.R. § 416.926a(b)(1)(iii), the ALJ noted Claimant's allegations of feeling depressed and misunderstood. See CAR 965. The ALJ also noted that Drs. Pham, Waranch, and Nimmagadda opined Claimant has no limitation in this domain. See id.

As to Claimant's health and physical well-being, 20 C.F.R. § 416.926a(b)(1)(vi), and ability to move about and manipulate objects, 20 C.F.R. § 416.926a(b)(1)(iv), the ALJ noted Claimant's "extensive history of treatment for asthma and allergies. . . ." CAR 966. The ALJ added:

> . . .While the claimant's providers have thoroughly documented her reported symptoms, the objective testing and the claimant's reports [of] improvement show that she is functional in the domains of moving about and manipulating objects as well as health and physical well-being. As discussed at length above, the claimant has often presented to care with normal respiratory physical examination findings, spirometry and pulmonary function testing has consistently shown findings ranging from mild obstruction to normal findings, and a sleep study showed only mild obstructive sleep apnea. Moreover, there is little documentation of ongoing examination findings suggesting any ambulatory, coordination, or fine or gross motor functioning difficulties.
>
> Id.

The ALJ also noted that Drs. Pham, Waranch, Dipsia, McWilliams, and Nimmagadda all opined that Claimant has less than marked limitations in these domains. See CAR 966.

/ / /

Finally, as to Claimant's ability to care for herself, 20 C.F.R. § 416.926a(b)(1)(v), the ALJ noted that, while Drs. Pham, Waranch, Dipsia, and McWilliams opined that the claimant has no limitations in this domain, Dr. Nimmagadda opined that Claimant has less than marked limitations. See CAR 966-67.

Plaintiff appears to take issue with the ALJ's consideration of Claimant's asthma across all domains. See ECF No. 13, pgs. 9-11. According to Plaintiff:

> "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." (20 C.F.R. §416.927(a)(1)) The regulation says nothing about them needing to take any specific form or needing to be consciously intended as such. This record contains a number of medical opinions this decision didn't discuss, and didn't evaluate adequately for proper consideration of the functional equivalency domains.
>
> Remember that when the Appeals Council remanded from federal court it specifically directed attention to certain statements of L.W.'s treating specialist Dr. Nandalike that "suggest[ed] greater limitations in functioning caused by the claimant's asthma, but [] not adequately evaluated by the [prior] Administrative Law Judge." (Transc., p.978) Most of these are *adduced* in this ALJ decision, but not *considered.* (Transc., p.961) It could be said this ALJ decision paid lip-service to the remand order but did not fulfill its duty to *evaluate* and *consider* these statements under subsection (c) of the above regulation within the context and meaning of the functional equivalency domains.
>
> Among the relevant things said over the years of this claim, especially by Dr. Kiran Nandalike, L.W.'s specialist at UC Davis Medical Center, are the frequent deployment of "poorly controlled" asthma (e.g., transc., pp.317, 319), that "She sleeps for about 10hrs at night. She sleeps with 6 pillows under her head. She snores every night, her snore is associated with heavy breathing, occasional choking and gasping episodes at night. She reports early morning headaches and daytime sleepiness" (transc., p.318); a handwritten "to whom it may concern" that L.W. had "acute symptoms" when exposed to pollen, outdoor particulate ___," and may be excused from P.E. (Transc., p.333); a "to whom" from 2016 stating L.W.'s asthma required "close clinical monitoring" and that she was "very symptomatic" and so might benefit from home-schooling then (transc., p.483); and another, from L.W.'s allergist, at transc., p.484 excusing L.W. from competitive running during spring and fall.
>
> Any argument this is countered during the evidence-evaluation portion of the brief must be prised (sic) from put-downs of L.W. and her mother and consist of aggregations of "normal," or "improved," pulmonary function test findings, or "improvement," or success at avoiding allergens. (Transc., pp.962–963) But no one says L.W.'s combination of persistent asthma and allergies *itself improved* or that the burden and side-effects of constant therapies, lifestyle adaptations, and accommodations lessened. And considering these "improvements" are noted throughout the pendency of this claim and L.W. met a listing during it, it's not clear what "improvement" means.

> Both the decision's put-downs of L.W.'s and her mother's allegations (see below, argument D) and its discussion of the specific domains partake of the same flaw inherent in the medical expert's reasoning mentioned in section D of the Statement of Facts: the functional equivalency domains focus on functional — real-life — effects, not the "medical criteria" of the listings.
>
> Significantly, the decision consolidates its discussion of the domains of Caring for yourself and Health and physical well-being. (Transc., p.966) It should therefore be fair to reverse its assessment/ evaluation of them in tandem too, and in doing so recognize such error as harmful because if both moved from the assessed 'less than marked' to 'marked', L.W. would have the necessary two 'marked's for disability.
>
> In this discussion (*id.*), the decision acknowledges L.W.'s "extensive history of treatment for asthma and allergies" (*id.*), but then counters this with less-than-alarming *objective* findings and very recent improvement in "control," whereupon it cites the nonexaminers though none of these were appropriate pediatric specialists (transc., pp.67, 78; and see the AC remand order) and the medical expert already shown to focus on *medical* outcomes and *continuous* effect on motor ability. (*Supra*, SoF, section D; transc., pp.1006–08) Using such barometers, a child forced to live in a bubble because of allergies who produced normal or less-than-alarming spirometry readings by constantly sucking medicines through a tube would not be 'marked'. This "bubble boy" or "bubble baby" imagery is only a dramatization of L.W.'s real-life facts, since she rarely goes outside (transc., pp.1011–12 ["she doesn't go outside barely, she won't even go to the grocery store with me"]), has taken steroids so consistently and in such doses that she "blew up" to what's morbid obesity for a child (cf.fn.3, *supra*), must constantly be taking particularly powerful medications for her asthma, and yet sleeps propped up with six pillows, snores, chokes, and gasps, wakes up with a headache, and is tired all day, as Dr. Nandalike recorded and the CE psychologist clinically observed. (Transc., p.336)
>
> It's already been said that the domain of Health and physical well-being includes " . . . the cumulative physical effects of physical or mental impairments *and their associated treatments or therapies* ***on your functioning***" (20 C.F.R. §416.926a(l); emphasis added) and that nothing in subsection (j) of the same regulation supports the view that Moving about &c. must be *constantly* affected, or always to the same extent.
>
> The decision's specific section addressing these two domains (transc., p.966) merely marshals normal or less-than-alarming *objective* findings, asserts L.W., "has responded to treatment," and points to the 'less than marked's assessed by the inappropriate nonexaminers and the ME who didn't fully grasp the thrust of the equivalency domains. This is both "isolating a specific quantum of supportive evidence," (*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Jones v. Heckler, supra,* 760 F.2d at 995 (9th Cir. 1985); and *Hammock v. Bowen,supra,* 879 F.2d at 501 (9th Cir. 1989)) and ignoring what these two domains cover and Whole Child Rulings' guidance that impairments be broadly applied to the domains. (Cf. fn.7, *supra.*)
>
> ECF No. 13, pgs. 9-11.

/ / /

/ / /

Referencing "argument B" which is not contained in Plaintiff's brief, Plaintiff also contends, without citation to authority, that the ALJ's analysis of functional equivalency is flawed because the ALJ impermissibly "consolidated" consideration of various domains. See ECF No. 13, pgs. 11-13.

As Defendant correctly observes, to show functional equivalency, the claimant must establish an extreme limitation in at least one of six functional domains, or marked limitation in two or more domains. See Warre v. Comm'r of SSA, 439 F.3d 1001, 1004 (9th Cir. 2006); see also 20 C.F.R. § 416.926a(a). An "extreme limitation" is one that very seriously interferes with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926(e)(3)(i). A "marked limitation" is one that seriously interferes with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926(e)(2)(i).

Here, as outlined above, the ALJ concluded that Plaintiff has not demonstrated either an extreme limitation in any one domain or marked limitations in two or more domains. See CAR 967. Plaintiff largely appears to rely on treating physician Dr. Nandalike's records to challenge the ALJ's conclusions. While the Appeals Council remand indicated that Dr. Nandalike's observations suggest greater limitation than originally determined and indicated further evaluation of that opinion is necessary, the record does not support Plaintiff's suggestion that the ALJ failed to do so in the second decision. To the contrary, the ALJ gave further consideration to Dr. Nandalike's observations by obtaining the expert testimony of Dr. Nimmagadda, who did not opine to any extreme or marked limitations in any domain. Doing so satisfied the ALJ's obligation under Acquiescence Ruling 04-1(9). See Howard ex rel. Wolfff v. Barnhart, 341 F.3d 1006, 1014 (9th Cir. 2003). Moreover, as Defendant notes, to the extent Plaintiff contends the ALJ erred with respect to opinions rendered by Dr. Nandalike, the record does not reflect any opinions as to functional capacity rendered by this provider.

/ / /

/ / /

/ / /

/ / /

**B. Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, Plaintiff, who is Claimant's mother, provided lay witness testimony. The ALJ provided the following summary of Plaintiff's testimony:

> At a hearing held on August 17, 2016, Ms. Woodruff alleged that the claimant has had serious asthma symptoms despite taking multiple medications each day. She has missed school and received failing grades in physical education due to her symptoms. They have tried other treatments including consuming black coffee, sitting in a steamed bathroom, and sleeping with an air purifier. She must sit when she sleeps because she often coughs at night. There are days when she wears a mask due to asthma and environmental allergies. She said that she had been bullied due to her obesity and due to her developing depression as a side effect of her medication. She experiences additional medication side effects including a poor memory, slow cognition, and fatigue. At the July 9, 2019, hearing, Ms. Woodruff added the claimant continues to have worsening symptoms at night.
>
> CAR 961.

The ALJ noted that "there is some evidence that is consistent with Ms. Woodruff['s] . . . allegations." Id. at 961-62. The ALJ also noted inconsistent evidence:

> While there is some evidence that lends support for Ms. Woodruff['s]. . . allegations, there is also evidence [that] is not entirely consistent with the[] allegations when considering the factors in Social Security Ruling 16-3p. For example, while progress notes from Children's Hospital & Research Center of Oakland show that the claimant has had issues with control over her asthma, these same progress notes also show that she has often presented with lungs that were clear to auscultation bilaterally ("CTAB") upon physical examination. (Ex. 3F). In fact, progress notes as early as December 19, 2012, show that the claimant improved after starting prednisone. (Ex. 3F/20). By January 16, 2013, progress notes show that the claimant was noted as not taking her medication consistently when she

> reported increased asthma symptoms. (Ex. 3F/17). Even so, spirometry testing performed that day continue to show "[n]ormal [s]pirometry" findings. (Ex. 3F/18). Whereas claimant previously reported increased symptoms, February 27, 2013, progress notes state that the claimant was "[d]oing great w/ compliance!" (Ex. 3F/15). Spirometry testing performed that day continue to show "[n]ormal [s]pirometry" findings. (Ex. 3F/2).
>
> CAR 962.

The ALJ outlined additional evidence inconsistent with Plaintiff's testimony, including normal testing in May 2013, July 2013, November 2013, and March 2014. See id. The ALJ also documented largely normal objective findings obtained by treating sources at UC Davis Medical Center throughout 2014, 2015, 2016, and 2017. See id. at 962-64. The ALJ concluded: "[W]hile there is evidence that lends some support for Ms. Woodruff's allegations, the evidence is not entirely consistent with her allegations." Id. at 964.

At the outset, the Court observes that Plaintiff appears to apply the incorrect standard to consideration of the ALJ's analysis of the lay witness evidence. Plaintiff argues that, rather than providing reasons germane to the witness, the ALJ erred by not identifying which evidence is not credible and why. As Defendant correctly notes, the standard for rejecting a claimant's testimony is different than the standard applicable to third-party testimony. "To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only give reasons that are germane to each witness." Revels v. Berrryhill, 874 F.3d 648, 655 (9th Cir. 2017). Here, the Court finds that the ALJ met this lower standard by outlining the objective findings which are inconsistent with Plaintiff's lay witness testimony.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV. CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 13, is denied;
2. Defendant's motion for summary judgment, ECF No. 14 is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: December 1, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE